# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Randall and Cynthia Christo

    Debtor(s)

Randall A. Christo, et al.

    Plaintiff(s)

        v.

Wells Fargo Bank, et al.

    Defendant(s)

**JUDGE RICHARD L. SPEER**

Case No. 12-3068

(Related Case: 12-30083)

## DECISION AND ORDER

This cause comes before the Court on the Motion to Dismiss filed by the Defendant, Wells Fargo Bank, N.A. (Doc. No. 11). The Defendant brought its Motion to Dismiss against the adversary proceeding filed by Plaintiffs entitled, "Complaint to Determine Dischargeability." (Doc. No. 1). Each of the Parties filed written arguments in support of their respective positions. The Court has now had the opportunity to review these arguments, as well as the entire record of the case. Based upon this review, and for the reasons explained herein, the Court finds that the Defendant's Motion to Dismiss should be Granted.

## FACTS

On January 10, 2012, the Plaintiffs, Randall and Cynthia Christo, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. At the time they filed their petition for bankruptcy relief, the Plaintiffs held a fee interest in certain real property the Plaintiffs used as their residence. A value of $84,200.00 was attached to the property by the county auditor. However,

Randall A. Christo, et al. v. Wells Fargo Bank, et al.
Case No. 12-3068

a recent appraisal conducted of the property set forth that the property was worth significantly less, with the appraisal assigning a value to the Plaintiffs' residence of $68,300.00.

At the time they commenced their case, the Plaintiffs' residence was encumbered by two mortgages, both held by the Defendant: (1) a first mortgage in the amount of $68,329.93; and (2) a second mortgage in the amount of $25,706.35. No proof of claim has been filed by the Defendant regarding either of these claims.

During the pendency of their bankruptcy case, a discharge was entered in favor of the Plaintiffs. Also, the trustee, charged with administering the Plaintiffs' bankruptcy estate, determined that no assets were available for distribution.

On May 2, 2012, the Plaintiffs filed the action now before the Court, entitled "Complaint to Determine Dischargeability." In their Complaint, the Plaintiffs sought the following relief:

> . . . that the second mortgage be declared to be an unsecured mortgage. The terminology lien be released. The amount owed on the second mortgage be treated as an unsecured debt to be paid pro-rata along with other unsecured debts . . . .

(Doc. No. 1). In response, the Defendant filed its Motion to Dismiss on the basis that the Plaintiffs failed to state a claim upon which relief may be granted, Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 16).

## DISCUSSION

The Plaintiffs have entitled their action before the Court as a "Complaint to Determine Dischargeability." This designate, however, is an improper characterization of the Plaintiffs' cause of action.

A complaint to determine dischargeability necessarily implicates § 523(a) of the Bankruptcy Code. Nowhere in their Complaint, however, do the Plaintiffs cite to or otherwise make reference to § 523(a), or its terminology. Instead, the substance of the Complaint brought by the Plaintiffs seeks a determination that the second mortgage held by the Defendant against their residence should be avoided. This type of action is more properly categorized, and will be treated[1] as "a proceeding to determine the validity, priority, or extent of a lien or other interest in property." FED.R.BANKR.P. 7001(2).

In 28 U.S.C. § 157(b)(2)(K), it is provided that a determination concerning the "validity, extent, or priority of liens" is deemed to be a core proceeding. It is then set forth in 28 U.S.C. § 157(b)(1) that, with respect to a "core proceeding," a bankruptcy court may enter final orders and judgments. Accordingly, on the Plaintiffs' Complaint to avoid the second mortgage held by the Defendant, this Court has been conferred with jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

Against the Plaintiffs' action to avoid its second mortgage, the Defendant filed a Motion to Dismiss. The Defendant's Motion to Dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) of the Federal Rules of Civil procedure, which is made applicable to this proceeding by Bankruptcy Rule 7012(b)(6), provides that a court may dismiss a case for "failure to state a claim upon which relief can be granted." Such relief, however, can only be entered when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 2917, 125 L.Ed.2d 612 (1993). *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed. 80 (1957). In

---

[1] Because the Federal Rules of Procedure, and the applicable Bankruptcy Rules which incorporate the Federal Rules of Procedure, are based on notice pleading, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585, 127 S.Ct. 1955 (2007), this Court has recognized that it may be proper to amend the pleadings to conform to issues placed before court. *See* 11 U.S.C. § 105(a); *In re Barton*, 321 B.R. 869, 875 (Bankr.N.D.Ohio 2004) (bankruptcy court, under its equitable powers, may revise a pleading to conform to the evidence presented); Fed.R.Bankr.P. 7015(b).

making this determination, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations in the complaint as true. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993).

The Bankruptcy Code recognizes that, when a debtor files for bankruptcy relief, a creditor may hold an interest in the debtor's property. *John Graham, Trustee v. The Huntington Nat'l Bank. (In re Medcorp. Inc.)*, 472 B.R. 444, 449 (Bankr. N.D.Ohio 2012). This interest is designated as a "lien" which the Bankruptcy Code defines to mean a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Each of the mortgages held by the Defendant is deemed to be a "lien" for purposes of bankruptcy law; specifically, a mortgage is deemed to be a "security interest" which the Bankruptcy Code defines as a "lien created by an agreement." 11 U.S.C. § 101(51).

In a bankruptcy case, a creditor holding a "lien" is afforded certain benefits beyond those of creditors who do not hold liens – *e.g.*, an unsecured creditor. Of import, it is the general rule that liens will "pass through bankruptcy unaffected." *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). As explained by the United States Supreme Court: "a bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor in personam – while leaving intact another – namely, an action against the debtor in rem." *Johnson v. Home State Bank*, 501 U.S. 78, 79, 111 S.Ct. 2150, 2151, 115 L.Ed.2d 66 (1991). The pass-through nature of liens in bankruptcy, however, is not always applicable.

In certain circumstances, a creditor holding an otherwise valid lien may have that lien avoided through the bankruptcy process. This process is sometimes referred to as lien stripping. A creditor's lien, however, will not be automatically stripped. Instead, for a lien to be avoided in bankruptcy, the party seeking avoidance is required to take some sort of affirmative action to have the lien avoided. As well, a lien may only be avoided where there exists specific statutory grounds providing for the lien's avoidance. *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 92–93 (4th Cir.1995).

Page 4

Randall A. Christo, et al. v. Wells Fargo Bank, et al.
Case No. 12-3068

In their Complaint, the Plaintiffs cited only to § 1322(b)(2) as a statutory basis to avoid the Defendant's second mortgage. This provision provides that, in proposing a plan of reorganization, a debtor may "modify the rights of holders of secured claims,. . . ." The Plaintiffs' reliance on this provision, however, as a basis to avoid the Defendant's mortgage, carries with it two inherent weaknesses.

First, the text of § 1322(b)(2), which allows the modification of a secured creditor's claim, is circumscribed by additional language providing that it does not apply when the claim is "secured only by a security interest in real property that is the debtor's principal residence . . . ." In this case, the mortgage sought to be avoided is held by the Defendant against the Plaintiffs' residence, thereby bringing into play this restriction.[2] Even if this were not the case, the Plaintiffs' reliance on § 1322(b)(2) has an absolutely fatal deficiency.

The Plaintiffs sought relief under Chapter 7 of the Bankruptcy Code, while the applicability of § 1322(b)(2), being a Chapter 13 provision, is strictly limited to debtors who seek relief under Chapter 13 of the Bankruptcy Code. As set forth in § 103(i) of the Code, "Chapter 13 of this title applies only in a case under such chapter." Accordingly, as the Plaintiffs sought relief under Chapter 7 of the Bankruptcy Code, they are not entitled to any benefit bestowed by § 1322(b)(2), which is limited to those debtors who seek to repay their debts by filing for relief under Chapter 13 of the Code. *See* H.R.Rep.No.595, 95th Cong. 1st Sess. 5 (1977) (the policy behind the enactment of Chapter 13 was to encourage debtors to repay their debts).

Under Chapter 7 of the Bankruptcy Code, there is simply no basis for a debtor to avoid an otherwise valid mortgage or consensual lien. This, however, was not always the case. Prior to the

---

[2] Section 1322(b)(2) specifically proscribes a debtor from modifying the rights of a secured creditor who holds a security interest in real property that functions as the debtor's principal residence. In *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106 (1993), the United States Supreme Court held that this proscription meant that a debtor could not seek to use § 506 to avoid a creditor's mortgage on the debtor's residence.

Page 5

Randall A. Christo, et al. v. Wells Fargo Bank, et al.
Case No. 12-3068

United States Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), some courts had permitted Chapter 7 debtors to avoid a creditor's consensual lien to the extent that, with respect to the underlying collateral, the lien did not attach to any equity. *See, e.g., Gaglia v. First Federal Sav. & Loan Ass'n*, 889 F.2d 1304 (3rd Cir. 1989). The rationale for this conclusion rested upon the interplay between subsections (a) and (d) of § 506.

Section 506(a) of the Bankruptcy Code allows a debtor to bifurcate a claim into its secured and unsecured components so that a creditor's secured claim is limited to the value of its collateral, while that portion of the claim above the collateral's value is treated as an unsecured claim.[3] Section 506(d) then provides that, subject to some exceptions, a lien held by a creditor is void to the extent that the lien secures a claim against the debtor that is not an allowed secured claim. (see statutory language, *infra*). Based upon a reading of these two provisions together, some courts had reasoned that "a lien on the debtor's property could be avoided to the extent it secured the portion of an allowed claim that was not an 'allowed secured claim' by virtue of its conversion into an unsecured claim pursuant to the bifurcation provisions of section 506(a)." 4-506 Collier on Bankruptcy ¶ 506.06[1].

The Supreme Court's decision in *Dewsnup v. Timm* put an end to this practice. In *Dewsnup*, the Court held that a lien could not be avoided under § 506(d), even though undersecured, and that the lien securing the entire amount of the indebtedness survived a Chapter 7 bankruptcy undisturbed. 502 U.S. at 417, 112 S.Ct. at 778. In coming to this conclusion, the Supreme Court cited to the fact that it could not discern any clear evidence that Congress intended to change the traditional rule that, in liquidation cases, a lien remained with the collateral until foreclosure. *Id.* Yet, even with the Supreme Court's pronouncement in *Dewsnup*, there still remained an unanswered question: Whether a lien that was completely unsecured was still subject to avoidance?

---

[3] Section 506(a) provides in, pertinent part, "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . ."

Page 6

Randall A. Christo, et al. v. Wells Fargo Bank, et al.
Case No. 12-3068

In *Dewsnup*, the lien at issue was partially secured. Thus, what the debtor sought to do in *Dewsnup* was reduce the value of the lien to the value of the collateral, yet still leaving the lien, itself, intact. Given this factual situation as presented in *Dewsnup*, however, the possibility was still left open that a debtor could avoid a lien when, as is the situation in this case, superior lien(s) on the underlying collateral exceeded its value, leaving the junior lien completely unsecured. In the case of *Talbert v. City Mortgage Services (In re Talbert)*, 344 F.3d 555 (6th Cir.2003), this exact issue, as to whether an unsecured junior lien is subject to avoidance in light of the Supreme Court's decision in *Dewsnup*, was addressed by the Sixth Circuit Court of Appeals.

In *In re Talbert*, the Sixth Circuit framed the question before it as this: "whether a debtor who has filed for Chapter 7 bankruptcy may avoid a valueless lien under § 506(d) of the Bankruptcy Code, 11 U.S.C. § 506(d)." *Id.* at 557. After considering the "analytical underpinnings" of the Supreme Court's holding in *Dewsnup*, the Court concluded that § 506(d) could not, in a Chapter 7 case, be used to "strip off" a creditor's lien. In the words of the Court:

> Section 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor. When a debtor proceeds under Chapter 7, creditors are entitled to their lien position until foreclosure or other permissible final disposition is had. Thus, we conclude that a Chapter 7 debtor may not use 11 U.S.C. § 506 to 'strip off' an allowed junior lien where the senior lien exceeds the fair market value of the real property.

*Id.* at 561-62 (internal quotations and citations omitted). For purposes of this matter, the Court's decision in *In re Talbert* is directly on point, meaning that the Plaintiffs cannot rely on § 506 to avoid the Defendant's second mortgage, notwithstanding the Defendant's acknowledgment that, for purposes of its Motion to Dismiss, the second mortgage it holds against the Plaintiffs' residence does not attach to any equity.

In looking at their arguments in opposition to the Defendant's Motion to Dismiss, the Plaintiffs rely heavily on the Defendant having failed to file a proof of claim in support of its second mortgage. According to the Plaintiffs, "it is clear from the case law that the creditor has to file a

12-03068-rls   Doc 19   FILED 09/04/12   ENTERED 09/04/12 16:11:15   Page 7 of 12

proof of claim in order for the [debtor] to object to the claim. Since no claim was filed, the Defendant cannot rely on Section 502 Allowance of Claims." (Doc. No. 17, at pg. 2).

It is fair to state that the position advanced by the Plaintiffs holds that the pass-through nature of liens in bankruptcy is contingent upon the lien holder filing a proof of claim so as to afford a debtor the opportunity to object to the creditor's interest. This position, however, seeks to make a connection between the filing of a proof of claim and the allowance of a creditor's lien where no such connection exists.

A creditor holding a lien does not need to file proof of claim to retain its lien interest. Instead, a creditor who holds a lien is entitled to ignore the proof of claim process altogether and look solely to its lien for the satisfaction of its claim. *In re Gordon*, 471 B.R. 614 (D.Colo. 2012). This is not to say that a secured creditor stands to gain by not filing a proof of claim. To the contrary, the filing of a proof of claim, and the allowance of that claim, is the *sine qua non* for receiving a distribution from the bankruptcy estate or, in a Chapter 13 case, from a debtor's confirmed plan of reorganization. In this case, however, the filing of a proof of claim by the Defendant would have been a vain act as the Plaintiffs' bankruptcy estate had no assets available for distribution. In fact, in this particular case, the Court, pursuant to Bankruptcy Rule 2002(e),[4] had sent notice to the Defendant not to file a proof of claim unless notified otherwise.

This lack of connection between avoiding a creditor's lien and the filing of a proof of claim is part of the structure of the Bankruptcy Code and Rules. First, in § 502(d)(2) it is provided:

---

[4]
Notice of no dividend

In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

Page 8

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--
>
> > (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

The effect of this provision is, thus, to decouple any notion that a creditor's lien can be avoided simply because the creditor did not file a proof of claim, thereby partially codifying the principle that liens will generally pass through a debtor's bankruptcy case.

Bankruptcy Rule 3002(a) reinforces this conclusion by providing that only an unsecured creditor is required to file a proof of claim for the claim to be allowed. Specifically, this Rule provides, in relevant part: "An *unsecured creditor* or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed,. . ." FED.R.BANKR.P. 3002(a) (emphasis added). Neither this Rule, nor any other Rule, requires a secured creditor to file a proof of claim as a condition precedent for the allowance of its lien. *See also In re Nowak*, 586 F.3d 450, 455 (6th Cir.2009) (citing to § 506(d) and Bankruptcy Rule 3002(a) and observing that a "secured creditor is usually not required to file a proof of claim to maintain its interest in the collateral to which its security interest attaches.").

As a final point in opposition to the Defendant's Motion to Dismiss, the Plaintiffs set forth that the precedent set by the Supreme Court in *Dewsnup* should be discounted because, in their words, the "case is a really old case that has been largely overruled by more recent cases . . . ." (Doc. No. 17, at pg. 2). This argument, however, is specious, as otherwise controlling Supreme Court precedent does not go stale merely because of its age.

Furthermore, the principal case cited by the Plaintiffs in support, *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2nd Cir.2001), does nothing to help their position. The facts presented in *In re Pond* involved a Chapter 13 case and whether a debtor could utilize § 1322(b)(2), *discussed supra*, to avoid a lien. The *In re Pond* case is, thus, not applicable in this Chapter 7 case;

Randall A. Christo, et al. v. Wells Fargo Bank, et al.
Case No. 12-3068

nor does its holding contradict the Supreme Court's holding in *Dewsnup* which was also a Chapter 7 case.

In sum, based upon the precedents set forth by the Supreme Court in *Dewsnup* and the Sixth Circuit in *In re Talbert*, the Defendant has sustained its burden for its Motion to Dismiss. As such, this adversary proceeding will be Dismissed. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that Motion to Dismiss filed by the Defendant, Wells Fargo Bank, be, and is hereby, GRANTED.

***IT IS FURTHER ORDERED*** that this adversary complaint, be, and is hereby, DISMISSED.

Dated: September 4, 2012

_____
Richard L. Speer
United States
Bankruptcy Judge

Certificate of Service

This is to certify that a copy of the foregoing Decision and Order has been sent this 4th day of September 2012 by ordinary US Mail to the following:

James E Hitchcock
650 W 1st St
Defiance, OH 43512-2102

Randall A Christo
5209 Riverview Drive
Payne, OH 45880

Cynthia L Christo
5209 Riverview Drive
Payne, OH 45880

Phyllis A Ulrich
Carlisle McNellie Rini Kramer and Ulrich
24755 Chagrin Blvd
#200
Cleveland, OH 44122-5690

Wells Fargo Servicing Center
P.O. Box 536210
Atlanta, GA 30353

Wells Fargo Home Mortgage
3480 Stateview Blvd.
MAC X 7802--03H
Fort Mills, SC 29715

Wells Fargo Bank
c/o Primary Financial Services
3115 N. 3rd Ave. Ste. 112
Phoenix, AZ 85013

Wells Fargo Bank NA
c/o Csc-Lawyers Incorporating
Statutory Agent
50 West Broad Street
Columbus, OH 43215

Nationsbanc Mortgage Corp.
1616 W. Market Street
Johnson City
Greenville, TN 37743

NAF, Inc.. New America Financial
3131 Turtle Crek Blvd. Suite 1300
Dallas, TX 75219

Paulding County Treasurer
Paulding County Courthouse
Room 102
115 N. Williams
Paulding, OH 45879

_____
Deputy Clerk